KENJI M. PRICE #10523
United States Attorney
District of Hawaii

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII
**Jun 18, 2020**
LIAN ABERNATHY, CLERK

DARREN W.K. CHING #6903
Assistant U.S. Attorney
PJKK Federal Building
300 Ala Moana Blvd., Room 6-100
Honolulu, Hawaii 96850
Telephone: (808) 541-2850
Facsimile: (808) 541-2958
E-mail: darren.ching@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) MAG. NO. 20-00633 WRP |
| Plaintiff, | ) CRIMINAL COMPLAINT;<br>) AFFIDAVIT |
| v. | ) |
| ANGELA DOMINGO, | ) |
| Defendant. | ) |

## CRIMINAL COMPLAINT

I, the undersigned complainant, being duly sworn, state the following is true and correct to the best of my knowledge and belief:

<u>Embezzlement and Misapplication by a Credit Union Employee</u>
(18 U.S.C. § 657)

From a precise date unknown, but by at least March 24, 2014, and continuing to on or about October 31, 2017, both dates being approximate and inclusive, within the District of Hawaii, ANGELA DOMINGO, the defendant, being an employee of CU Hawaii Federal Credit Union, an institution whose deposits were insured by the National Credit Union Administration, with intent to injure and defraud CU Hawaii Federal Credit Union, willfully embezzled and misapplied over $250,000.00 of the moneys and funds belonging to, and entrusted to the care of CU Hawaii Federal Credit Union.

All in violation of Title 18, United States Code, Section 657.

I further state that I am a Special Agent of the United States Secret Service, and that this Complaint is based upon the facts set forth in the following affidavit, which is attached hereto and made part of this Complaint by reference.

_____
DANIELLE KULP
Special Agent
U.S. Secret Service

Sworn to under oath before me telephonically and attestation acknowledged pursuant to FRCP 4(d) and 4.1(b) on June 18, 2020.



_____
Wes Reber Porter
United States Magistrate Judge

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) MAG. NO. 20-00633 WRP |
| Plaintiff, | ) AFFIDAVIT IN SUPPORT OF ) CRIMINAL COMPLAINT |
| v. | ) |
| ANGELA DOMINGO, | ) |
| Defendant. | ) |

AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, DANIELLE KULP, after being first duly sworn on oath, deposes and says the following is true and correct to the best of my knowledge and belief:

## BACKGROUND

1. I am a "law enforcement officer of the United States" within the meaning of Title 18, United States Code, Section 2510(7), who is empowered by law to conduct investigations, and make arrests.

2. I am a Special Agent with the United States Secret Service ("USSS") assigned to the Honolulu Field Office in the District of Hawaii. I have served in this capacity since March 2018. I am familiar with the facts set forth in this affidavit, which are based on my personal knowledge, as well as information provided to me by other law enforcement personnel and/or witnesses. This affidavit contains only the information necessary to support probable cause and

does contain not every fact and matter observed or known to the government.

## PROBABLE CAUSE

3. At all times relevant to this complaint and affidavit, CU Hawaii Federal Credit Union ("CU Hawaii"), was an institution whose deposits were insured by the National Credit Union Administration.

4. On November 5, 2017, CU Hawaii's Senior Internal Auditor contacted the USSS to report a large cash discrepancy at the Hilo branch following a surprise cash audit. CU Hawaii conducted the audit after an employee of the branch reported seeing Angela DOMINGO ("DOMINGO") take a $100 Federal Reserve Note ("FRN") from the credit union's vault and place it in her pocket on October 31, 2017.

5. DOMINGO was the Operations Manager of the Hilo Branch at the time of the audit and was responsible for all of the cash within the credit union's Hilo branch. The last time a Surprise Cash Audit ("SCA") at CU Hawaii Hilo Branch was performed was on March 20, 2014, when Domingo was the Assistant Operations Manager at the Hilo Branch.

6. On November 7, 2018, I and another USSS Special Agent interviewed DOMINGO at her home in Keaau and at the Pahoa Police station, regarding her involvement in a reported loss of approximately $637,000 at CU Hawaii. I informed of DOMINGO her rights and she waived these rights by initialing and

signing the waiver of rights form. She also verbally expressed that she wished to speak with us. The following are the sum and substance of excerpts from the recorded interviews.

        A.    I explained to DOMINGO that CU Hawaii reported missing cash and asked her if she had ever taken any of the cash from CU Hawaii. She responded, "Not that much but yeah. Definitely not no 600 something but yeah."

        B.    DOMINGO estimated that the largest amounts she took from CU Hawaii's cash vault and drawers, and then deposit into her husband, daughter, niece, and nephew's accounts were $4,000 - $5,000. She estimated that she took $2,000 - $3,000 at a time from the cash can or the vault drawer under her desk. DOMINGO believed that she took the money in denominations of $100. She estimated that she took cash from CU Hawaii about 50 - 100 times. She mentioned that she used two CU Hawaii Member Service Representatives ("MSR") to make cash deposits (Agent's note: CU Hawaii records indicate she also used other MSRs to make cash deposits). DOMINGO stated that for one of the MSRs, the largest deposit was from between $5,000 - $8,000 and she used this MSR 40 times. DOMINGO also stated that she used the other MSR 60 times. She also stated that none of the other MSRs were involved or knew what she was doing (Agent's note: interviews of other MSRs and employees are consistent with DOMINGO's claim).

      C.    DOMINGO stated that she did not feel appreciated at the credit union and she was not paid enough for the amount of work she was expected to do. She stated that it felt like an addiction after she began taking the cash, that she knew it was wrong, and that she should not have done it but because it was so easy, no one knew about it. She stated that after working at the branch for several years she realized they were going to let her take control and she knew she could get away with it. She stated it was "stupid" because she did not need to do it. She stated that she would use the money to buy things for her co-workers such as lunches, Halloween costumes, and a round of drinks after work. She also stated that she used some the money from CU Hawaii for a family trip to Florida.

      D.    DOMINGO stated that she did not keep track of what she took from CU Hawaii. She stated that she could not recall the specific amount she took but did state that the smallest amount taken and deposited was approximately $2,500 and the largest being $8,000. When asked if in 2017, $250,000 ($2,500 x 100 times) in cash was the minimum amount stolen, she responded, "I guess so." When the $250,000 was referenced again, after laughing she responded, "I know it's not funny. I'm sorry, it's like stupid funny."

      7.    On November 7, 2018, DOMINGO also completed a written statement in which she apologized for taking money from CU Hawaii. She stated that while she was unsure why she took the cash, she was overworked and

6

underpaid, and it was so easy to do it became an "addiction." She claimed to have spent the money on "unnecessary items."

8. On May 13, 2019, after waiving her constitutional rights, DOMINGO was reinterviewed and was shown printouts summarizing the cash deposits made to her accounts from January 2014 through January 2018. She initialed cash deposits that she confirmed were funds that she removed from CU Hawaii's vault and subsequently had the funds deposited into her accounts at the credit union. While the amount of deposits she confirmed by initialing the deposit slips only totaled approximately $69,317, she stated she could not remember every incident.

9. While not all of DOMINGO's CU Hawaii records for cash deposit transactions included the specific denominations of the cash deposits, consistent with DOMINGO's statement that she thought she would take "mostly" $100 FRNs when skimming the vault's cash supply, 62 cash deposits were composed of 10 or more $100 FRNs. These 62 deposits totaled approximately $164,832.00

10. Consistent with her November 7, 2018 interview, in which DOMINGO estimated making 100 deposits of CU Hawaii cash into her accounts, an analysis of the cash deposits to her accounts revealed that from approximately March 26, 2014 to October 28, 2017, there were approximately 108 cash deposits greater than or equal to $1,000, totaling over $290,000.

11. A review of DOMINGO's CU Hawaii records show that she made cash deposits into the joint accounts she shared with her daughter, husband, niece, and nephew. She did not make large cash deposits into her primary account (XXX300) where she received direct deposit checks while employed at CU Hawaii. Instead, the cash deposits to her joint accounts from March 20, 2014 (last SCA at branch) through November 1, 2017 (DOMINGO's final day at branch) totaled over approximately $810,000.

    A.    XXX280 – Daughter's account

Approximately, from March 26, 2014 to September 30, 2017, approximately $304,374.45 in cash was deposited into this account. Of this approximately $304,374.45, there were approximately 34 deposits of $1,000 or more consisting of at least 10 $100 FRNs, and 19 days in which there were multiple deposits of multiple denominations on the same day equaling over $1000 for a total of approximately $118,719.

    B.    XXX930 – Husband's account

Approximately, from June 13, 2014 to October 28, 2017, approximately $489,718.12 in cash was deposited into this account. Of this approximately $489,718.12, there were approximately 39 deposits of $1,000 or more consisting of at least 10 $100 FRNs, and 14 days in which there were multiple deposits of

multiple denominations on the same day equaling over $1000, totaling approximately $161,434.12.

    C.    XXX020 – Niece's account

On approximately December 2, 2016, in one transaction, approximately $5,000.00 in cash was deposited into this account.

    D.    XXX430 – Daughter's account #2

Approximately, from October 16, 2017 to October 25, 2017, approximately $5,817.00 in cash was deposited into this account. Of this approximately $5,817.00, there was approximately one deposit of $1,000 or more consisting of 17 $100 FRNs and one day with multiple deposits of multiple denominations including 35 $100 FRNs equaling over $3,317.00, totaling approximately $5,317.00.

    E.    XXX470 – Nephew's account

On approximately February 4, 2016, in one transaction, approximately $4,540.00 in cash was deposited consisting of at least 45 $100 FRNs into this account.

12.    The above-described deposits were not consistent with the income of DOMINGO, her husband (a worker on a papaya farm), or her minor daughter, niece, and nephew.

13. Based on the facts described above, and on my training and experience, I submit that there is probable cause to arrest the defendant, ANGELA DOMINGO, for violating Title 18, United States Code, Section 657.

Respectfully submitted,

DANIELLE KULP
Special Agent
U.S. Secret Service

This Criminal Complaint and Affidavit in support thereof were presented to, approved by, and probable cause found to believe that the defendant above-named committed the crime charged in the Criminal Complaint by the undersigned Judicial Officer, at 2:56 pm on June, 18, 2020.

Sworn to under oath before me telephonically and attestation acknowledged pursuant to FRCP 4(d) and 4.1(b).



Wes Reber Porter
United States Magistrate Judge